IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for<br>OFFICE OF INSPECTOR GENERAL,<br>UNITED STATES DEPARTMENT OF<br>HOUSING & URBAN DEVELOPMENT | :<br>:<br>:<br>:<br>: | |
| v. | : | MISC. NO. 10-0205 |
| PHILADELPHIA HOUSING AUTHORITY | :<br>: | |

**SURRICK, J.**                                                                                                                        FEBRUARY 4 , 2011

## **MEMORANDUM**

Presently before the Court is the United States' Petition for Summary Enforcement of Inspector General Subpoena (ECF No. 1) filed by the United States Attorney on behalf of the Office of the Inspector General ("OIG") of the United States Department of Housing and Urban Development ("HUD"). For the following reasons, the Petition will be granted.

**I.  BACKGROUND**

On November 9, 2010, the United States Attorney, on behalf of the Office of Inspector General ("OIG") of the United States Department of Housing and Urban Development ("HUD"), petitioned for summary enforcement of an Inspector General's subpoena. (Pet. Ex. A, ECF No. 1.) The administrative subpoena *duces tecum* was issued pursuant to § 6(a)(4) of the Inspector General Act of 1978 ("Inspector General Act"), 5 U.S.C. app. 3. The subpoena was issued on July 14, 2010, and was served on the Philadelphia Housing Authority ("PHA") the same day. (Pet. Ex. A.) The subpoena requires the PHA to provide the first five digits of the Social

Security numbers of 28 PHA employees in connection with HUD-OIG's audit survey of the PHA.[1] (*Id.*) The PHA has failed to produce any records in response to the subpoena. (Pet'r's Mem. Ex. A ¶ 20, ECF No. 1.)

The HUD-OIG is conducting an audit survey of the PHA to determine "whether, with respect to the program under audit, any real or apparent conflicts of interest exist due to employee affiliations with contractors or subcontractors of the PHA and/or due to the PHA's purchasing goods or services from its employees." (Pet. ¶ 8.) The program under audit is the PHA's scattered site housing projects. (Pet'r's Mem. Ex. A.) The subpoena at issue directed the PHA to turn over the requested partial Social Security numbers to James Carrington of the HUD-OIG before July 28, 2010. (Pet. Ex. A.) The PHA responded by informing the HUD-OIG that "consistent with past practice, PHA was not prepared to provide employee [Social Security number] information but would work cooperatively with OIG's auditors to the extent that OIG required additional information about particular employees." (Resp't's Mem. 5, ECF No. 3.) PHA's counsel, James Eisenhower, exchanged a number of emails with John P. Buck, OIG's Regional Inspector General for Audit, regarding the disclosure of the requested Social Security numbers. (Resp't's Mem. Ex. B, C, D.) The parties were ultimately unable to reach an agreement. The HUD-OIG was unwilling to accept anything less than the 28 partial Social Security numbers demanded by the subpoena. The PHA refused to provide them. Accordingly, HUD-OIG filed the instant Petition for summary enforcement of the subpoena. (Pet. Ex. A.)

---

[1] These 28 employees were identified by HUD-OIG, "based on their job titles and descriptions, as those most likely to have been involved in the award and/or administration of contracts relevant to the audit survey." (Pet'r's Mem. Ex. A ¶ 15, ECF. No. 1) The first five digits of the Social Security numbers were requested as a means of differentiating the individuals who work for PHA from other individuals with the same names. (*Id.* ¶ 11.)

## II. DISCUSSION

### A. The Role of the Court

When determining the enforceability of an administrative subpoena, courts play a "strictly limited role." *See Sandsend Fin. Consultants v. Fed. Home Loan Bank Bd., Ltd.*, 878 F.2d 875, 879 (5th Cir. 1989); *see also Univ. of Med. and Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003); *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1997). Courts will enforce an administrative subpoena if "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *See United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166 (3d Cir. 1986); *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

### B. The Authority of the Inspector General

The Inspector General Act of 1978 provides:

> It is the duty and responsibility of each Inspector General, with respect to the establishment within which his Office is established: (1) to provide policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of such establishment; . . . (3) to recommend policies for, and to conduct, supervise, or coordinate other activities carried out or financed by such establishment for the purpose of promoting economy and efficiency in the administration of, or preventing and detecting fraud and abuse in, its programs and operations.

5 U.S.C. app. 3 § 4(a). Thus, the HUD-OIG is authorized by statute to conduct audits and investigations of HUD programs or operations. The PHA's scattered site housing projects is one such operation, since it involves the expenditure of federal funds provided by HUD. The purpose of HUD-OIG's audit survey of this program is "to determine whether the Authority administered

3

its scattered site housing and related funding in accordance with applicable HUD requirements." (Pet'r's Mem. Ex. A ¶ 7.)

Under § 6 (a) of the Inspector General Act, "[e]ach Inspector General is authorized . . . (4) to require by subpoena the production of all information, documents, reports, answers, records, accounts, papers, and other data in any medium (including electronically stored information, as well as any tangible thing) and any documentary evidence *necessary in the performance of the functions assigned by this Act . . . .*" 5 U.S.C. app. 3 § 6(a) (emphasis added). The PHA contends that the information sought by the subpoena is unnecessary, and that the Government has failed to show the required need for the partial Social Security numbers. (Resp't's Mem. 1.) The Government maintains that the Social Security numbers are necessary to the performance of the HUD-OIG's assigned functions under the Inspector General Act. (Pet'r's Mem. 6.)

In *Westinghouse*, the Third Circuit determined that Congress did not intend to limit the scope of the Inspector General's subpoena power with the use of the word "necessary." 788 F.2d at 170 ("A constricted interpretation would be at odds with the broad powers conferred on the Inspector General by the statute. Nor is the long line of decisions granting agencies wide latitude in their use of subpoenas grounded on the precise statutory language setting out their subpoena power.") Quoting from the Supreme Court's decision in *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943), the Third Circuit observed that a district court is obliged to enforce a subpoena that is not "plainly incompetent or irrelevant to any lawful purpose." 317 U.S. at 509. In affirming the district court's enforcement of the Inspector General's subpoena, the *Westinghouse* court stated that "Congress intended that the courts accept the Inspector General's

4

determination of what information is 'necessary to carry out the functions assigned by this Act' so long as the information is *relevant* to an Inspector General function." 788 F.2d at 171 (emphasis added).

### C. "Reasonably Relevant" Information

It is a function of the Inspector General to coordinate audits of the activities of the PHA "for purposes of promoting economy and efficiency in the administration of, or preventing and detecting fraud and abuse in, its programs and operations." 5 U.S.C. app. 3 §§ 4(a)(1), (3). Therefore, to the extent that the requested partial Social Security numbers are relevant to one of these functions, the subpoena should be enforced.

The term "relevant" has been broadly defined. In *United States v. Oncology Services Corp.*, the Third Circuit stated that "[r]easonably relevant means merely that the information must be relevant to some (any) inquiry that the [agency] is authorized to undertake." 60 F.3d 1015, 1020 (3d Cir. 1995) (internal citations and emphasis omitted). "The court must defer to the agency's appraisal of relevancy so long as it is not 'obviously wrong.'" *United States v. Hunton & Williams*, 952 F.Supp. 843, 854 (D.D.C. 1997) (citations omitted). As long as the material sought "touches on a matter under investigation," it is enough to be deemed "relevant" and the subpoena must be enforced. *Sandsend*, 878 F.2d at 882.

The partial Social Security numbers requested here are clearly relevant. The HUD-OIG is seeking these numbers in order to more efficiently cross-reference employees of the PHA as part of its determination of whether a problematic conflict of interest exists due to employee affiliations with contractors or subcontractors of the PHA. (Pet. ¶ 8.) Obviously, such conflicts of interest can result in fraud and abuse. Preventing or detecting fraud and abuse within

programs receiving federal funding is one of the primary purposes of the OIG. *See* 5 U.S.C. app. 3 §§ 4(a)(1), (3). Accordingly, we are compelled to conclude that the partial Social Security numbers at issue here are properly subject to subpoena by HUD-OIG.

### D. "Unreasonably Broad or Burdensome"

The Government claims that the subpoena is narrowly targeted to allow HUD-OIG to complete its audit survey because "it seeks focused information directly relevant to this legitimate inquiry - namely the partial Social Security numbers of select employees likely to have the authority to award contracts. . . ." (Pet'r's Mem. 9.) The PHA claims that the information sought by the subpoena is unreasonably broad or burdensome because it seeks unnecessary information "in contravention [of] Pennsylvania law and public policy." (Resp't's Mem. 10.)

The burden of demonstrating that a demand is unreasonable falls upon the subpoenaed party. *Powell*, 397 U.S. at 58. This burden is not easily met when the agency inquiry "is authorized by law and the materials sought are relevant to the inquiry." *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973); *Texaco, Inc.*, 555 F.2d at 882. Agencies are accorded "extreme breadth" in conducting their investigation. *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1517 (D.C. Cir. 1993). Moreover, a demand that is "unreasonably broad or burdensome" has been defined as a demand with which "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 650 (5th Cir. 1999) (citations omitted).

The subpoena in the instant case merely requires the PHA to produce the first five digits of the Social Security numbers of 28 employees. This is not burdensome in terms of time, labor or finances and does not threaten to disrupt or seriously hinder PHA's business operations.

E.   **Pennsylvania Laws and Public Policy**

The PHA argues that the HUD-OIG's subpoena is unreasonably broad and burdensome because it seeks unnecessary information in violation of Pennsylvania law and in contravention of the public policy of Pennsylvania. (Resp't's Mem. 10.) Specifically, the PHA points to Pennsylvania's Social Security Number Privacy Act, 71 Pa. Cons. Stat. § 2601, and Pennsylvania's Right-to-Know Law, 65 Pa. Cons. Stat. § 67.708(b)(6)(i)(A).[2] (Resp't's Mem. 10-11.)

The Social Security Number Privacy Act limits the collection of Social Security numbers on state and local forms and prohibits health insurers from using Social Security numbers. 71 Pa. Cons. Stat. § 2601. It provides that "individuals applying for or renewing a professional license or certification, occupational license or certification or recreational license required by a Commonwealth agency or municipality shall be permitted to provide an alternative to disclosing their SSNs if the SSNs are collected by the agency or municipality solely for the purpose of complying with 23 Pa.C.S. § 4304.1(a)(2) (relating to cooperation of government and nongovernment agencies)." 71 Pa. Cons. Stat. § 2603. The 28 partial social security numbers in the instant case are not requested in order to apply for or renew "a professional license or certification, occupational license or certification or recreational license. . . ." *Id.* They are also

---

[2] The PHA also cites the case of *Stewart v. Moll*, 717 F. Supp. 2d 454 (E.D. Pa. 2010), in support of its position. Stewart is a § 1983 case in which defense counsel objected to questions posed during the deposition of a police officer about his Social Security number and contact information. The court recognized that Social Security numbers are "sensitive information," and that Plaintiff must establish a "particularized need for the information as well as safeguard its dissemination." *Id. Stewart* is inapposite. It involved the disclosure of the Social Security number of a police officer in a § 1983 excessive force case during a deposition. It did not involve administrative subpoenas or the government's authority to subpoena such sensitive information under the Inspector General Act.

7

not being requested or collected by a Commonwealth agency or municipality. The HUD-OIG, a federal government office, is requesting the partial Social Security numbers in order to efficiently conduct an audit of the PHA. Based upon the specific language of Pennsylvania's Social Security Number Privacy Act, it has no application here.

The Right-to-Know Law gives transparency to the inner workings of state government and requires the disclosure of public records. Lindsay M. Shoeneberger, *Striking a Balance Between Public Interest of Transparency of Government and the Privacy of Personal Identification and Security Information: An Examination of* Tribune-Review Publishing Co. v. Bodack, 19 Widener L.J. 577, 577-78 (2010). The statute identifies certain exemptions to the general requirement of disclosure. 65 Pa. Cons. Stat. § 67.708(b)(6)(i)(A)-(C). Specifically, subsection (A) exempts "[a] record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number." 65 Pa. Cons. Stat. § 67.708 (b)(6)(i)(A). The exemptions in the Right-to-Know Law illustrate Pennsylvania's public policy in favor of protecting personal security information such as Social Security numbers. However, the purpose of the statute is to provide state government transparency without causing "inadvertent disclosures of important personal identification and security information." Shoeneberger, *supra* at 1. An OIG subpoena does not lead to an "inadvertent disclosure." The exemptions in the Right-to-Know law were not intended to protect personal security information against a subpoena issued pursuant to the Inspector General Act.

In any event, even though the Social Security Number Privacy Act and the Right-to-

8

Know Law may reflect the public policy of Pennsylvania regarding the disclosure of sensitive personal information, such statutes that restrict the disclosure of such information are preempted by the Inspector General Act under the Supremacy Clause of the Constitution. Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of [C]ongress" are invalid. U.S. Const. art. VI, cl. 2. Unless Congress directs otherwise, the Supremacy Clause preempts state laws which are in conflict with federal law. Such conflicts exist when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597 (1991) (quoting *Hines v. Davidowitz*, 312 U.S. 52 (1941)). "If the purpose of the [federal] act . . . must be frustrated and its provisions be refused their natural effect," then a conflict exists. *Savage v. Jones*, 225 U.S. 501, 533 (1912); *see Bruesewitz v. Wyeth, Inc.*, 561 F.3d 233 (3d Cir. 2009); *United States v. First Nat'l Bank of Maryland*, 866 F. Supp. 884, 886 (D. Md.1994) (finding a conflict between state and federal law when the requirements of the Maryland Confidential Financial Record Act "hinder the enforcement" of the Inspector General Act, and noting that such interference is expressly prohibited by the Supremacy Clause); *United States v. New York Dep't of Taxation and Fin.*, 807 F. Supp. 237, 240-41 (N.D.N.Y. 1992) (finding that a New York tax statute conflicts with the Inspector General Act where the state law "obstructs fulfillment of [the OIG's] goals" by preventing the OIG from receiving tax and wage records).

Congress's purpose in promulgating the Inspector General Act and giving the OIG broad investigatory and subpoena powers was to facilitate the detection of waste, fraud, and abuse in federal programs. *See* Inspector General Act of 1978, No. 95-452, § 2, 92 Stat. 1101. "The enactment reflected congressional concern that fraud, waste, and abuse in United States agencies

9

and federally funded programs 'were reaching epidemic proportions.'" *Westinghouse*, 788 F.2d at 165 (quoting S. Rep. No. 1071, 95th Cong., 2d Sess. 4 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2676, 2679). Congress specifically stated that, "[s]ubpoena power is absolutely essential to the discharge of the Inspector General and Auditor General's functions. . . . Without the power necessary to conduct a comprehensive audit of these entities, the Inspector and Auditor General could have no serious impact on the way federal funds are expended." S. Rep. 1071, 95th Cong., 2d Sess. 34, *reprinted in* U.S.C.C.A.N. 2676, 2679.

In the instant case the HUD-OIG seeks to use its subpoena power to audit potential waste, fraud and abuse within the PHA. If we were to interpret both the Social Security Number Privacy Act and the Right-to-Know Law as preventing the disclosure of the information sought by the HUD-OIG, these Pennsylvania statutes then "stand as an obstacle" to the OIG's functions as Congress intended them under the Inspector General Act. The state laws are therefore "in conflict with federal law" and preempted under the Supremacy Clause of the Constitution.

## IV.     CONCLUSION

For the foregoing reasons, the Government's Petition for Summary Enforcement of Inspector General Subpoena will be granted.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**
